IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

ADAM T. SMITHSON and TABITHA
YOUNG, individually and as
CO-EXECUTOR AND CO-EXECUTRIX of the
ESTATE OF WILLARD T. SMITHSON,

       Plaintiffs,

v.                             CIVIL ACTION NO. 1:15-0583

THERESA B. SMITHSON,

       Defendant.

## MEMORANDUM OPINION

Pending before the court is plaintiffs' Motion to Remand. (Doc. No. 5).  For the reasons set forth below, that motion is GRANTED.

## I.  Background

This civil action, which was originally filed in the Circuit Court of Monroe County, West Virginia, on December 23, 2014, involves a dispute over proceeds from a 401k account and retirement and pension benefits of the late Willard T. Smithson. Willard and Theresa Smithson were married on or about April 24, 2010, in Monroe County, West Virginia.  Prior to their marriage, on April 20, 2010, Theresa and Willard entered into a "Real estate and Personal Property Contract Agreement."  Complaint ¶ 4 and exhibit thereto (hereinafter "Agreement").  In that Agreement, both Theresa and Willard agreed "to forever waive any right, title or interest either may have in Alimony/spousal

support, life insurance, disability, pension, retirement benefit
plan, or 401 (K) account of the other, and sign any documents as
may be required by any plan administrator to effectuate such
waiver." Id. ¶ 7 and exhibit thereto. Furthermore, on March 13,
2010, Willard T. Smithson signed a Last Will and Testament
leaving "all insurance, disability, pension, retirement benefit
plan, or 401(K) retirement funds" to his children, Adam T.
Smithson and Tabitha Smithson Young. Id. ¶ 8 and Exhibit
thereto.

Willard Smithson died on March 18, 2014. See id. ¶ 1. The
instant lawsuit filed by Adam Smithson and Tabitha Young, who
serve as Executor and Executrix of Smithson's Estate, followed.
In their lawsuit, plaintiffs allege that, following Willard
Smithson's death, Theresa Smithson "did thereafter complete the
necessary documentation to claim payment of [Willard's]
retirement/pension plan benefits and 401k account as accrued
through his employment with Celanese Corporation. Id. at ¶ 10.
Plaintiffs allege that the proceeds from Willard Smithson's 401k
account, in the amount of $256,770.11, were distributed to
Theresa Smithson on or about Mary 22, 2014. See id. at ¶ 11.
Plaintiffs further allege that Willard Smithson's pension
benefits, in the monthly amount of $2,423.02, have been and
continue to be distributed to Theresa Smithson. See id. at ¶ 12.
According to plaintiffs, Theresa Smithson's actions in this

regard are a material breach of the terms of her Agreement with

Willard T. Smithson.  See id. at ¶ 15.  To that end, they assert:

> That, as a direct and proximate result of the
> Defendant's intentional, willful, malicious and
> fraudulent conduct the Plaintiffs and the Estate of
> Willard T. Smithson have incurred damages, including,
> but not limited to, damages for the amount of the 401k
> account proceeds which were distributed totaling
> $256,770.11 (and for any resulting negative tax
> treatment from the manner in which said proceeds were
> distributed); damages for the total value of retirement
> pension plan benefits which have and will be
> distributed (and for any resulting negative tax
> treatment from the manner in which said proceeds are
> being distributed); damages for their attorney fees and
> expenses; and, any and all such other damages as may
> reasonably have arisen from the conduct of the
> Defendant.

Id. at ¶ 17.

On January 14, 2015, Theresa Smithson removed the case to

this court, contending that plaintiffs' state law claims were

preempted by the Employee Retirement Income Security Act, 29

U.S.C. § 1101 et seq. ("ERISA"), and are therefore considered to

have arisen under the laws of the United States for purposes of

removal jurisdiction.  Plaintiffs have moved to remand this

action to state court.  The motion to remand has been fully

briefed and is ripe for decision.

**II.  Removal Jurisdiction**

Civil actions brought in state court may only be removed to

federal court if the federal court has "original jurisdiction"

over the action.  28 U.S.C. § 1441(a).  The removing defendant

bears the burden of demonstrating that the federal district court

has jurisdiction.  Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).  Furthermore, because removal raises federalism concerns, the court must carefully scrutinize the facts to ensure that removal is appropriate and resolve any doubt about the propriety of removal in favor of remanding to state court.  See id.

There are three general grounds upon which a defendant can sustain removal: (1) where the parties are completely diverse, the defendant does not reside within the state where the state court action had been initiated, and the amount in controversy exceeds the statutory minimum set forth by Title 28 United States Code Section 1332; (2) where the complaint asserts a federal claim so as to trigger jurisdiction under Title 28 United States Code Section 1331; or (3) where the complaint contains a state law claim that is completely preempted by federal law, so that the federal court must also consider it as giving rise to federal question jurisdiction under Title 28 United States Code Section 1331.  Lontz v. Tharp, 413 F.3d 435, 439-40 (4th Cir. 2005)).

Under the well-pleaded complaint rule a court may not look beyond the specific allegations of the complaint to determine whether the case presents an issue of federal law.  Gully v. First Nat'l Bank, 299 U.S. 109, (1936); Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908); Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996) (ordinarily, courts look no further

than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal question jurisdiction under 28 U.S.C. § 1331).  However, where a federal cause of action completely preempts a state cause of action as set out in the complaint, that complaint becomes one necessarily arising under federal law.  <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1 (1983).

## III.  Analysis

Removal jurisdiction can sometimes be a difficult concept to grasp, especially in the context of ERISA preemption.  However, our appeals court succinctly explained the doctrine of complete preemption ten years ago:

> The third justification for removal is actually a narrow exception to the well-pleaded complaint rule. "[K]nown as the 'complete preemption' doctrine," <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 393, 107 S. Ct. 2425, 96 L. Ed.2d 318 (1987), it provides that if the subject matter of a putative state law claim has been totally subsumed by federal law — such that state law cannot even treat on the subject matter — then removal is appropriate. <u>See</u> <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 124 S. Ct. 2488, 2494-95, 159 L. Ed.2d 312 (2004); <u>Franchise Tax Board v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 23-24, 103 S. Ct. 2841, 77 L. Ed.2d 420 (1983); <u>King</u>, 337 F.3d at 424-25. Although completely preempted claims are rare, they are held to satisfy the well-pleaded complaint requirements of <u>Mottley</u> and <u>Gully</u>.

> * * *

> We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it.  <u>Maryland Stadium Auth. v. Ellerbe Becket Inc.</u>, 407 F.3d 255, 260 (4th Cir. 2005) (quoting <u>Mulcahey</u>, 29 F.3d at 151).

5

"Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction." Custer v. Sweeney, 89 F.3d 1156, 1167 (4th Cir. 1996) (internal quotes omitted). Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims. See, e.g., Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir. 2004); King, 337 F.3d at 424; Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002); Cook v. Georgetown Steel Corp., 770 F.2d 1272, 1274 (4th Cir. 1985). The presumption, in other words, is against finding complete preemption. Custer, 89 F.3d at 1167.

But that presumption is rebuttable, because federal law occasionally "displace[s] entirely any state cause of action." Franchise Tax Board, 463 U.S. at 23, 103 S. Ct. 2841. When it does, federal law then "provide[s] the exclusive cause of action for such claims," and therefore "there is . . . no such thing as a state-law claim" in the regulated area. Beneficial, 539 U.S. at 11, 123 S. Ct. 2058. The doctrine of complete preemption thus prevents plaintiffs from "defeat[ing] removal by omitting to plead necessary federal questions." Franchise Tax Board, 463 U.S. at 22, 103 S. Ct. 2841. It thereby ensures compliance with congressional intent that federal courts be available to resolve certain claims which are peculiarly national in scope. Defendants' burden, then, is to demonstrate that a federal statute indisputably displaces any state cause of action over a given subject matter.

In assessing whether defendants have carried their burden, we may not conflate "complete preemption" with "conflict" or "ordinary" preemption. While these two concepts are linguistically related, they are not as close kin jurisprudentially as their names suggest. Complete preemption is a "jurisdictional doctrine," while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim. Sonoco Prods., 338 F.3d at 370–71. Ordinary preemption has been categorized as a federal "defense to the allegations." Caterpillar, 482 U.S. at 392, 107 S. Ct. 2425. And as a mere defense, the "preemptive effect of a federal statute . . . will not provide a basis for

6

removal." <u>Beneficial</u>, 539 U.S. at 6, 123 S. Ct. 2058
(internal citations omitted). <u>See also</u> <u>Rivet</u>, 522 U.S.
at 475-76, 118 S. Ct. 921; <u>Caterpillar</u>, 482 U.S. at
392-93, 107 S. Ct. 2425; <u>Metro. Life Ins. Co. v.
Taylor</u>, 481 U.S. 58, 66, 107 S. Ct. 1542, 95 L. Ed.2d
55 (1987) ("even an 'obvious' pre-emption defense does
not, in most cases, create removal jurisdiction");
<u>Franchise Tax Board</u>, 463 U.S. at 14, 28, 103 S. Ct.
2841. Even if preemption forms the very core of the
litigation, it is insufficient for removal.
<u>Caterpillar</u>, 482 U.S. at 393, 107 S. Ct. 2425.

By contrast, when complete preemption exists,
there is "no such thing" as the state action,
<u>Beneficial</u>, 539 U.S. at 11, 123 S. Ct. 2058, since the
federal claim is treated as if it appears on the face
of the complaint because it effectively displaces the
state cause of action. Complete preemption thus
"transform[s] the plaintiff's state-law claims into
federal claims." <u>Rivet</u>, 522 U.S. at 476, 118 S. Ct.
921. Since the complaint is then understood to state a
federal question, the well-pleaded complaint rule is
satisfied, thereby justifying removal under § 1441(b).

Recognizing that complete preemption undermines
the plaintiff's traditional ability to plead under the
law of his choosing, the Supreme Court has made clear
that it is "reluctant" to find complete preemption.
<u>Metro. Life</u>, 481 U.S. at 65. The Court has, in fact,
found complete preemption in only three statutes. <u>See</u>
<u>Beneficial</u>, 539 U.S. at 10-11, 123 S. Ct. 2058
(National Bank Act); <u>Metro. Life</u>, 481 U.S. at 66-67,
107 S.Ct. 1542 (ERISA § 502(a)); <u>Avco Corp. v. Aero
Lodge No. 735, Int'l Ass'n of Machinists</u>, 390 U.S. 557,
560, 88 S. Ct. 1235, 20 L. Ed.2d 126 (1968) (Labor
Management Relations Act ("LMRA") § 301).
Unsurprisingly, therefore, the Court has articulated
exacting standards that must be met before it will find
complete preemption. Most notably, the congressional
intent that state law be entirely displaced must be
clear in the text of the statute. <u>See Metro. Life</u>, 481
U.S. at 65-66, 107 S. Ct. 1542.

* * *

Nothing in <u>Beneficial</u> or <u>Rosciszewski</u> altered the
general principle that defendants seeking removal under
the doctrine of complete preemption bear a significant

7

> burden.  They must establish congressional intent to
> extinguish similar state claims by making the federal
> cause of action exclusive.  And as we must construe
> removal strictly, reasonable doubts must be resolved
> against the complete preemption basis for it.  Maryland
> Stadium Auth., 407 F.3d at 260.

Lontz v. Tharp, 413 F. 3d 435, 439-41 (4th Cir. 2005).

The Fourth Circuit has laid out a three-part test that must be satisfied in order for complete preemption to apply.  First, the plaintiff must have standing under § 502(a) of ERISA to pursue a claim.  Second, plaintiff's claim must fall within the scope of an ERISA provision that the plaintiff can enforce via § 502(a).  Finally, the claim must not be capable of resolution without interpretation of the ERISA plan.  Sononco Products Co v. Physicians Health Plan, Inc., 338 F.3d 366, 372 (4th Cir. 2003).  Particularly, § 502(a) provides a cause of action to a participant or beneficiary of an ERISA plan "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

In the instant case, it is clear that defendant is conflating ordinary preemption with complete preemption.  First, there is no discussion in any of the briefs about the different types of preemption nor is there any attempt to argue that the three-part test enunciated above has been satisfied.  Quite simply, "[a] state law claim can 'relate to' an ERISA plan and be preempted under § 514(a) and still not be encompassed under §

8

502(a)'s civil enforcement scheme." <u>See</u> <u>Warren, Jr. v. Blue</u>
<u>Cross and Blue Shield of South Carolina</u>, 129 F.3d 118, 1997 WL
701413 *2 (4th Cir. Nov. 12, 1997) (unreported table decision).
Defendant's brief is primarily directed at arguing why
plaintiffs' claim against her must fail instead of why the case
belongs in federal court.  In fact, defendant filed a combined
memorandum of law opposing plaintiffs' motion to remand and in
support of her own motion for summary judgment.  Furthermore, the
principal case relied upon by defendant, <u>Haqwood v. Newton</u>, 282
F.3d 285 (4th Cir. 2002), does not even reach the issue of a
court's removal jurisdiction as the case was originally filed in
federal court.  While <u>Haqwood</u> might prove dispositive on the
ultimate merits of the lawsuit, it does little to advance
defendant's argument that this case belongs in federal court.

In <u>Nikolopoulos v. Nikolopoulos</u>, No. 06-cv-398-JD, 2006 WL
3524463 *1 (D.N.H. Dec. 7, 2006), two brothers brought a suit in
state court against their step-mother seeking to impose a
constructive trust on long-term savings plan proceeds she had
improperly obtained and withheld from them after their father's
passing.  The step-mother sought to remove the state court action
to federal court on the ground that ERISA completely preempted
the brother's constructive trust claim.  <u>See</u> <u>id.</u> at *1.  The
court rejected the step-mother's complete preemption argument and
remanded the case to state court on the ground the brothers'

9

claim did not seek (1) benefits due under the terms of the plan, (2) to enforce rights under the plan, or (3) to clarify rights under the plan to future benefits. See id. at *2. Particularly, the court reasoned that the brothers' constructive trust claim did not fall within the scope of § 502(a) because the proceeds, which had been distributed to the step-mother, were no longer held by the plan administrator and because the brothers' claim assumed that the plan administrator distributed the proceeds in accordance with the terms of the plan. See id.

Like Nikolopoulos, this court finds that the defendant has failed to establish federal jurisdiction over the instant case. The proceeds from Willard Smithson's 401(k) plan have been distributed to the defendant and are no longer held by the plan administrator. Indeed, our appeals court has concluded that ERISA does not preempt post-distribution lawsuits against the beneficiaries of ERISA-governed policies. Andochick v. Byrd, 709 F.3d 296, 299-301 (4th Cir. 2013) (ERISA does not preempt post-distribution suits against ERISA beneficiaries alleging waiver); see also Central States, Se. & Sw. Areas Pension Fund v. Howell, 227 F.3d 672, 679 (6th Cir.2000) (ERISA did not preempt imposition of a constructive trust after benefits had been distributed in accordance with plan documents); Flesner v. Flesner, 845 F. Supp.2d 791, 799-802 (S.D. Tex. 2012) (ERISA did not preempt breach of contract claim brought by executor of

estate against beneficiary of ERISA-governed life insurance
policies because claim was based on beneficiary's breach of
divorce decree and proceeds of the policies had been
distributed); Partlow v. Person, 798 F. Supp.2d 878, 885 (E.D.
Mich. 2011) ("The law recognizes a distinction between a plan
administrator's obligation to pay over benefits to a named plan
beneficiary and that beneficiary's entitlement to keep those
funds thereafter."); Appleton v. Alcorn, 291 Ga. 107, 728 S.E.2d
549, 552 (Ga. 2012) ("In this case, since the proceeds of the
ERISA-covered plans were paid out to appellant and were no longer
in the control of the plan administrator," the trial court erred
when it dismissed breach of contract claim brought by father's
estate against his second wife arguing she contractually waived
her right to retain the proceeds of deceased father's
employer-provided 401(k) plan and life insurance policy.); Sweebe
v. Sweebe, 474 Mich. 151, 712 N.W.2d 708, 712 (Mich. 2006)
("[W]hile a plan administrator must pay benefits to the named
beneficiary as required by ERISA, this does not mean that the
named beneficiary cannot waive her interest in retaining these
proceeds.  Once the proceeds are distributed, the consensual
terms of a prior contractual agreement may prevent the named
beneficiary from retaining those proceeds.").

As to the unpaid pension plan benefits, plaintiffs are not
claiming that they should not be distributed to Theresa Smithson

11

but, rather, that she has no legal right to retain them.  Indeed,
neither Willard Smithson's employer, Celanese, nor the benefit
plan administrator are parties to this action.  Moreover, it does
not appear to the court that plaintiffs have standing under §
502(a) to pursue the instant claim and, accordingly, remand is
warranted.  See Estate of Nichols v. Gordon, No. 12-4098-RDR,
2012 WL 6003183, *3 (D. Kan. Dec. 3, 2012).  As the Gordon court
explained,

> Assuming that plaintiff may sue derivatively as a
> "participant" under an ERISA plan, it is still
> necessary for standing that plaintiff have a colorable
> claim to benefits. . . .  In the court's opinion,
> plaintiff does not have a colorable claim to
> undistributed benefits if it is not suing the plan or
> plan administrator.  Here, plaintiff is suing an
> alleged plan beneficiary, not the plan or the plan
> administrator.  Although the petition seeks a
> constructive trust upon future benefits, the named
> defendant has no control over undistributed benefits.
> Therefore, plaintiff does not have a colorable claim or
> standing to bring such a claim against defendant.
>
> Standing requires a causal connection between the
> injury and the conduct complained of and a likelihood
> that a favorable decision will redress the injury.
> Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62
> (1992).  A favorable decision against the named
> defendant will not have any impact upon undistributed
> benefits because the named defendant has no authority
> or control over undistributed benefits.  See National
> Parks & Conservation Ass'n v. Bureau of Land
> Management, 606 F.3d 1058, 1074-75 (9th Cir. 2009)(no
> standing to bring action against National Park Service
> to stop proposed land exchange for a landfill
> development project because National Park Service did
> not have authority to stop the project—the Bureau of
> Land Management did).

* * *

> Although plaintiff makes a claim for undistributed
> benefits in the petition in addition to a claim for
> post-distribution benefits, plaintiff does not have
> standing to make a claim for undistributed benefits
> against the only defendant named in this matter.
> Therefore, the court believes that remand is proper in
> this case.

Id. In any event, defendant has not shown that plaintiffs' claim
as to unpaid benefits satisfies the three-part test for complete
preemption to apply.

While the provisions of ERISA will no doubt be invoked as a
defense to plaintiffs' claim, that fact alone does not establish
defendant's right to removal.  Plaintiffs' claim is based on
Theresa Smithson's alleged breach of her Agreement with her
husband and Willard Smithson's expressed intentions, as opposed
to the terms of the plans or their administration.  It is
therefore clear that the plaintiffs' claim does not fall within
the scope of § 502(a) as it does not aim to (1) retrieve benefits
due under the terms of the plan, (2) enforce rights under the
plan, or (3) clarify rights under the plan to future benefits.[*]


IV. Conclusion

"Removal statutes do not create jurisdiction.  They are
instead a mechanism to enable federal courts to hear the cases

---

[*] As noted above, to the extent that plaintiffs seek unpaid
benefits, it does not appear that they are seeking a
determination of their rights under the plan but, rather, vis a
vis the Agreement.

13

that are already within their original jurisdiction." <u>Lontz v.</u>
<u>Tharp</u>, 413 F. 3d 435, 444 (4th Cir. 2005).  For the reasons set
forth above, the court hereby **GRANTS** the plaintiffs' motion to
remand.  Finding that it lacks subject matter jurisdiction to
adjudicate the instant matter, the court hereby **REMANDS** this
action to the Circuit Court of Monroe County, and **DIRECTS** the
Clerk to remove this matter from the court's active docket.

The Clerk is further directed to send a copy of this
Memorandum Opinion to all counsel of record, and to forward a
certified copy of the same to the Clerk of the Circuit Court of
Monroe County.

It is **SO ORDERED** this 15th day of May, 2015.

ENTER:

David A. Faber
Senior United States District Judge